# NEBRASKA ENGINEERING CORPORATION, Appellee,

v.

## Charles C. SHIVVERS, Appellant.

### No. 76–2036.

United States Court of Appeals, Eighth Circuit.

Submitted June 16, 1977.

Decided July 14, 1977.

Rudolph L. Lowell, Des Moines, Iowa, for appellant; C. Carleton Frederici, Des Moines, Iowa, on the brief.

Edmund J. Sease, Des Moines, Iowa, for appellee; Bruce W. McKee, Des Moines, Iowa, on the brief.

Before MATTHES, Senior Circuit Judge, BRIGHT, Circuit Judge, and MILLER, Judge.*

MATTHES, Senior Circuit Judge.

Nebraska Engineering Corporation (NECO) filed an action in the United States District Court for the Southern District of Iowa against Shivvers Enterprises, Inc. and Charles C. Shivvers seeking to invalidate certain patents and for other relief.[1] Simultaneously, plaintiff filed a motion seeking to enjoin defendant from terminating the parties' nonexclusive patent license agreement, and for an order authorizing plaintiff to pay royalties accruing under the license agreement to an escrow agent during the pendency of NECO's patent validity challenge. Defendant resisted the motion. However, the district court entered an order on October 1, 1976, directing that all royalty payments due the defendant under the license agreement be paid to an escrow agent pending the determination of the validity of the patents challenged by NECO; and enjoining the defendant from terminating the license agreement during the period of time the royalty payments were paid to the escrowee. After defendant's motion to reconsider the court's order of October 1, 1976 was denied, defendant appealed pursuant to 28 U.S.C. § 1292(a)(1), which specifically provides for an interlocutory appeal from an order granting an injunction. We reverse and remand with directions.

Preliminarily, we briefly discuss the salient terms of the license agreement and the partial compliance therewith by NECO, and thus place in proper perspective the legal issue posited by this appeal.

In March of 1968, the parties entered into a nonexclusive license agreement whereby NECO, in exchange for royalties, was granted manufacturing and other rights over certain grain handling devices which were the subjects of a patent application filed by Shivvers. The application matured into the three patents challenged below.

From 1968 through 1975, NECO made timely payments of over $164,000 in royalties. In 1976, however, NECO retained new counsel. On their advice, NECO defaulted on its royalty obligation, intending to assert patent invalidity as a defense if Shivvers brought an action for the royalty payments. Rather than sue for the royalties, however, Shivvers notified NECO of the delinquency as a prelude to exercising his contractual right to terminate the license.[2] In order to avoid termination of its license prior to a judicial determination that the underlying patents were invalid, NECO filed the action challenging the validity of the patents and the motion to which this appeal is addressed.

The fountainhead of patent validity challenges such as the one underlying this appeal is *Lear, Inc. v. Adkins*, 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610 (1969). There the Court rejected the doctrine of licensee estoppel and held that a licensee could assert patent invalidity as a defense to an action for enforcement of a patent license

---

* The Honorable Jack R. Miller, Judge, U.S. Court of Customs and Patent Appeals, sitting by designation.

1. Jurisdiction was premised on 28 U.S.C. § 1338, conferring original and exclusive jurisdiction in any case relating to patents in the United States District Court, and on diversity of citizenship. Appellant Shivvers is a citizen of Iowa and NECO is a Nebraska corporation, apparently having its principal place of business in that state.

   The complaint was filed on July 14, 1976. On August 12, 1976, plaintiff voluntarily dismissed as to Shivvers Enterprises, Inc. and the ensuing proceedings were between NECO and Charles C. Shivvers.

2. The agreement provided in pertinent part:

   In the event that NECO shall be more than thirty (30) days delinquent in transmitting one of the royalty payments or reports required by Section 3.3, SHIVVERS may give written notice to NECO of its intention to terminate and if such delinquency is not removed within thirty (30) days following the date of receipt of such written notice, this agreement may then be terminated by a second written notice to that effect from SHIVVERS to NECO. In the event of such termination, accrued royalties or other sums then due hereunder shall remain due and payable to SHIVVERS.

agreement, and that a licensee was not required to continue to pay royalties under such an agreement while the validity of the underlying patent was being adjudicated. In *Lear,* the Court examined the interests of licensor, licensee, and the general public in light of federal patent policy:

> Surely the equities of the licensor do not weigh very heavily when they are balanced against the important public interest in permitting full and free competition in the use of ideas which are in reality a part of the public domain. Licensees may often be the only individuals with enough economic incentive to challenge the patentability of an inventor's discovery. If they are muzzled, the public may continually be required to pay tribute to would-be monopolists without need or justification. We think it plain that the technical requirements of contract doctrine must give way before the demands of the public interest in the typical situation involving the negotiation of a license after a patent has issued.

*Lear, supra* at 670–71, 89 S.Ct. at 1911. By "unmuzzling" licensees, the Court sought to encourage the prompt adjudication of patent validity. *Atlas Chemical Industries, Inc. v. Moraine Products,* 509 F.2d 1, 6 (6th Cir. 1974).

Other courts of appeals have thoroughly explored the ramifications of *Lear* in passing on the numerous patent challenges spawned by that decision. Indeed, the Sixth Circuit has considered no fewer than four such cases. *Troxel Manufacturing Co. v. Schwinn Bicycle Co.,* 465 F.2d 1253 (6th Cir. 1972) (*Troxel I*); *Troxel Manufacturing Co. v. Schwinn Bicycle Co.,* 489 F.2d 968 (6th Cir. 1973), *cert. denied,* 416 U.S. 939, 94 S.Ct. 1942, 40 L.Ed.2d 290 (1974) (*Troxel II*); *Atlas Chemical Industries, Inc. v. Moraine Products, supra; PPG Industries, Inc. v. Westwood Chemical, Inc.,* 530 F.2d 700 (6th Cir.), *cert. denied,* 429 U.S. 824, 97 S.Ct. 76, 50 L.Ed.2d 86 (1976).

The present case does not call into question the authority of these precedents; in fact, the district court sanctioned NECO's

patent challenge action and the litigants concede that that case is well grounded. The sole and narrow question presented by this appeal is whether the order of October 1, 1976 entered by the district court, misapplied *Lear* and its progeny.

In justifying the order to escrow royalty payments and the granting of the injunction prohibiting the termination of NECO's license, the district court ostensibly (albeit mistakenly) sought to effectuate the policies of *Lear* and to maintain the status quo of the parties. The district court expressed the view that the threat of license termination for nonpayment of royalties might deter licensees from bringing patent validity challenges. Citing *Crane Co. v. Aeroquip Corp.,* 356 F.Supp. 733 (N.D.Ill.1973), the court held that such a chilling effect was impermissible under *Lear.*

We do not regard *Crane* as apposite, controlling or authority for the court's action in this case. In *Crane,* a licensor alleged that the licensee's conduct in bringing a patent validity challenge was a material breach of the parties' license agreement so as to justify the licensor's unilateral termination of the license. The court recognized that to allow unilateral termination of a patent license by the licensor *because* a licensee sought to challenge the validity of the underlying patent would completely contravene the policies of *Lear.* Unlike the present case, however, the question of royalty payments specifically due under the license agreement was not in issue since all such royalties had been paid. *Crane, supra* at 737–38. Moreover, the court implied that licensees who continue to use patented articles while withholding royalties during the pendency of their patent validity litigation risk being sued as infringers. *Crane, supra* at 741.

Similarly, *Lear* prevents only the affirmative enforcement of royalty payment provisions in license agreements against licensees engaged in patent validity challenges. Thus, NECO was free to cease paying royalties. Nothing in *Lear,* however, precludes defendant from treating such nonpayment

as grounds for termination under the agreement.[3] Unless NECO is willing to forego the safety of the license agreement, it should continue to comply with that agreement's provisions.

Subsequent to the decision of the district court under scrutiny here, the Second Circuit in *Warner-Jenkinson Co. v. Allied Chemical Corp.*, 193 USPQ 753 (2d Cir. 1977), was confronted with the question of whether a licensee had the right to escrow royalty payments. The Second Circuit took note of the district court's opinion in this case, and in effect declined to follow it. We subscribe to the reasoning reflected in the following statement by the court in *Warner-Jenkinson*:

> We believe that if the plaintiffs wish to continue to invoke the protections of their licensing agreements, they should be required to continue paying their royalties to the defendant. Ultimately, all royalties paid after the filing of the complaint may have to be returned to the plaintiffs. . . . At present, plaintiffs already have the option of withholding royalties and thereby breaching the licensing agreement; of course, they would then run the risk of an injunction if they should lose on the merits. It would not be fair for the plaintiffs to be allowed simultaneously to reap all the benefits of the licensing agreement and to deprive the licensor of all his royalties. Patents are presumed to be valid, 35 U.S.C. § 282; until invalidity is proven, the patentee should ordinarily be permitted to enjoy the fruits of his invention. The principal effect of an escrow arrangement would be to put undeserved pressure on the defendant.

*Warner-Jenkinson Co. v. Allied Chemical Corp., supra,* 193 USPQ at 757.

We do not reach and need not, therefore, decide at this stage of the case whether the

licensor or licensee will be entitled to royalties paid during the pendency of the litigation. *See USM Corp. v. Standard Pressed Steel Co.,* 524 F.2d 1097 (7th Cir. 1975). All we decide today is that the district court committed fatal error in entering the order which generated this appeal.

Accordingly, the cause is remanded with directions to the district court to dissolve the injunction and to vacate and set aside the order directing the escrowing of royalty payments accruing pursuant to the license agreement. We further direct the district court to expedite the disposition of NECO's action challenging the validity of defendant's patent.

---

**3.** Nor does NECO's deposit of funds with an escrow agent constitute compliance with the payment terms of the license agreement. As the Sixth Circuit has noted, payment of royalties to an escrow agent is "tantamount to nonpayment." *PPG Industries, Inc. v. Westwood Chemical, Inc., supra* at 705. Indeed, absent a showing of necessity, the escrowing of royalty payments has been characterized as an unjustified, prejudgment seizure of a licensor's property to secure a licensee's potential recovery. *Milton Roy Co. v. Bausch & Lomb, Inc.,* 418 F.Supp. 975 (D.Del.1976).