Richard J. LEE, Plaintiff,

v.

LEE CUSTOM ENGINEERING, INC., a Wisconsin Corporation, Defendant.

No. 77–C–376.

United States District Court,
E. D. Wisconsin.

Sept. 14, 1979.

Michael, Best & Friedrich by Andrew O. Riteris, Milwaukee, Wis., for plaintiff.

Quarles & Brady by Thomas O. Kloehn, Thomas M. Wozny, and Stanley L. Lind, Milwaukee, Wis., for defendant.

DECISION and ORDER

MYRON L. GORDON, District Judge.

The plaintiff has moved for partial summary judgment and an order declaring the exclusive license agreements covering the eight patents in suit to be terminated by reason of the failure of the defendant to make royalty payments. The motion is accompanied by the plaintiff's affidavit and is opposed by the defendant's brief and affidavit of its president, Gordon N. Schaenzer. The motion will be denied.

Partial summary judgment is proper only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Rule 56(c), Federal Rules of Civil Procedure. There is no question that the license agreements provided for the reversion of all patent rights conveyed thereunder to the plaintiff in the event the defendant failed to make required royalty payments.

It is undisputed that the defendant made late payments prior to the commencement of this suit. Such payments were not made until the plaintiff notified the defendant that the patent rights had reverted. Moreover, the defendant has refused to make any payments since the initiation of this

action. The only question is whether the foregoing facts establish the plaintiff's right to the relief he seeks.

■ I believe the plaintiff is not so entitled for two reasons. First, there are material facts in dispute as to the issue whether the *late*, pre-litigation payments should be treated as a failure to make such payments. The defendant contends that the contract provisions relating to the making of payments were modified by the acts of the plaintiff and the defendant during the twelve year performance of the agreements. Specifically, the defendant asserts that it customarily made late payments, with interest, and the plaintiff accepted these payments. This allegation raises the question whether the written license agreements were modified by the acts of the parties with respect to the timeliness of royalty payments. *See Santa Cruz Oil Corp. v. Allbright-Nell Co.*, 115 F.2d 604 (7th Cir. 1940). This question may not be resolved upon the present posture of the case.

■ Second, in my opinion, the law neither requires the making of royalty payments nor permits the licensor to terminate the license agreements because the licensee has failed to make such payments once the licensee challenges the validity of the patent. The first of these propositions was clearly established in *Lear, Inc. v. Adkins*, 395 U.S. 653, 673–74, 89 S.Ct. 1902, 1912–1913, 23 L.Ed.2d 610 (1969):

"The decisive question is whether overriding federal policies would be significantly frustrated if licensees could be required to continue to pay royalties during the time they are challenging patent validity in the courts. . . . It seems to us that such a requirement would be inconsistent with the aims of federal patent policy. Enforcing this contractual provision would give the licensor an additional economic incentive to devise every conceivable dilatory tactic in an effort to postpone the day of final judicial reckoning. . . . [E]nforcing this contractual provision would undermine the strong federal policy favoring the full

and free use of ideas in the public domain."

The court of appeals for the second circuit has interpreted this passage:

"What *Lear* precisely held was that the courts may not enforce a royalty agreement with respect to an invention embodied in an American patent while the licensee was contesting its validity and could recover only when, as and if validity was established." *Painton & Co., Ltd. v. Bourns, Inc.*, 442 F.2d 216, 226 (2d Cir. 1971).

It is therefore clear that if the plaintiff in this action were seeking an order to enforce the license provision requiring the payment of royalties, such an order would have to be denied squarely on the authority of *Lear* and its progeny. What is not so clear is whether the *Lear* principle also compels the denial of an order terminating a license because the licensee has refused to make royalty payments pendente lite. One court has answered this question in the following manner:

". . . *Lear* prevents only the affirmative enforcement of royalty payment provisions in license agreements against licensees engaged in patent validity challenges. . . . Nothing in *Lear*, however, precludes defendant from treating such nonpayment as grounds for termination under the agreement." *Nebraska Engineering Corp. v. Shivvers*, 557 F.2d 1257, 1259–60 (8th Cir. 1977) (citing *PPG Industries, Inc. v. Westwood Chemical, Inc.*, 530 F.2d 700, 705 (6th Cir.), *cert. denied*, 429 U.S. 824, 97 S.Ct. 76, 50 L.Ed.2d 86 (1976)).

The *PPG Industries* case cited in *Shivvers* did not decide the question presented here, but instead it upheld the licensor's right to recover royalties withheld during the period *prior* to the filing of the action even though the subject patent was later declared invalid. Moreover, language in an earlier sixth circuit case seems contrary to the position adopted by the court of appeals for the eighth circuit in *Shivvers*. In *Atlas Chemical Industries Inc. v. Moraine Products*, 509 F.2d 1, 7 (6th Cir. 1974), the court held that

royalties paid into escrow pendente lite "belong to neither [the licensor nor the licensee] until the validity of the patent is determined."

Similarly inapposite is *USM Corp. v. Standard Pressed Steel Co.*, 524 F.2d 1097 (7th Cir. 1975), upon which the plaintiff places great reliance. The question considered and decided in the *USM* case was precisely stated by the court:

> "We need not, therefore, decide at this stage of the case whether the licensor or the licensee will be entitled to royalties attributable to the period of the pendency of the litigation. We need only decide, as we do, that entitlement will not depend upon whether the royalties have been paid to the licensor." *Id.* at 1099.

No other decision of the court of appeals for the seventh circuit, including *Crane Company v. Aeroquip Corporation*, 504 F.2d 1086 (7th Cir. 1974), has any bearing on the question raised in the case at bar.

In deciding *Shivvers*, the court of appeals for the eighth circuit expressly adopted the reasoning of *Warner-Jenkinson Co. v. Allied Chemical Corp.*, 567 F.2d 184 (2d Cir. 1977). In *Allied Chemical*, the court refused to permit the licensee to pay royalties into escrow pendente lite:

> "Under most licensing arrangements, as in the present case, withholding of royalty payments constitutes a material breach of the contract. A licensee who wishes to continue using the patented element cannot withhold royalty payments without laying himself open to large potential liability for infringement and an injunction against all future use of the patented substance. . . . We believe that if the plaintiffs wish to continue to invoke the protections of their licensing agreements, they should be required to continue paying their royalties to the defendant. . . . It would not be fair for the plaintiffs to be allowed simultaneously to reap all the benefits of the licensing agreement and to deprive the licensor of all his royalties." *Id.* at 187–88.

Thus, it is plain that some courts have interpreted *Lear* to mean that a licensee cannot be required to make royalty payments during the pendency of a patent infringement action, but that the failure to make such payments constitutes a material breach of the license agreement, entitling the licensor to terminate it, rendering the licensee liable for infringement if the patent is later declared valid. With this result, I respectfully disagree.

The rationale of the *Lear* case was to encourage licensees, who "may often be the only individuals with enough economic incentive[,] to challenge the patentability of an inventor's discovery," as a means of protecting "the important public interest in permitting full and free competition in the use of ideas which are in reality a part of the public domain." *Lear, Inc. v. Adkins, supra*, 395 U.S. at 670, 89 S.Ct. at 1911. To give the licensor economic incentive to have the validity issue resolved as quickly as possible and to discourage dilatory tactics, the Supreme Court freed the licensee from the duty to make royalty payments once it decided to challenge the patent. When confronted with the contention that the license agreement required the payment of royalties until invalidity was determined, the Court responded: "The parties' contract, however, is no more controlling on this issue than is the State's doctrine of estoppel, which is also rooted in contract principles." *Id.* at 673, 89 S.Ct. at 1912.

In my opinion, the interests protected by the courts of appeals in the two cases discussed above "are also rooted in contract principles" and are in conflict with "the important public interest" vindicated in *Lear*. The speed and efficiency gained by permitting the licensee to suspend royalty payments would surely be lost if nonpayment meant termination of the license. I believe the threat of termination would discourage the withholding of royalties because, as was stated in the second circuit case, termination would lay the licensee open to possibly substantial liability for damages for infringement and an injunction against future use of the product whose patentability had been successfully

established. Since few licensees will run this risk, to permit the licensor to terminate the license agreement because of nonpayment would enable it to achieve indirectly what it quite obviously cannot obtain directly—specific performance of the provision requiring payment.

That it may seem unfair to allow the licensee to continue receiving benefits under the license agreement while depriving the licensor of royalties is a contractual interpretation which must give way in the face of "overriding federal policies. . ." *Lear, Inc. v. Adkins, supra,* 395 U.S. at 673, 89 S.Ct. 1902. Accordingly, notwithstanding the position adopted by the courts of appeals for the second and eighth circuits, I am persuaded that the plaintiff's contention in this case, if sustained, would as effectively "muzzle" the licensee as would the doctrine of licensee estoppel rejected in *Lear.* To induce a swift determination of the validity of the challenged patent, the licensee must remain free to suspend royalty payments, without the fear of termination and its potentially harsh consequences.

My decision is supported by a case which is similar to the one at bar and which arose in this circuit. In *Crane Co. v. Aeroquip Corporation,* 356 F.Supp. 733 (N.D.Ill.1973), *modified on other grounds,* 504 F.2d 1086 (7th Cir. 1974), the licensee withheld the payment of royalties, but the contract did not expressly permit the licensor to terminate the agreement for that reason. The court stated that "the general rule of this Circuit appears to be that the mere failure to pay royalties is not, absent a specific provision in the license, sufficient to allow the licensor to unilaterally terminate the license." *Id.* at 738 (citations omitted). When the licensor suggested additional reasons for terminating the agreement, the court remarked:

> "With respect to the other alleged grounds for termination, irrespective of their merits as a matter of contract law, the policy considerations found to be determinative in the *Lear* case should have equal force here. . . . [J]ust as the imposition of the doctrine of licensee es-

toppel would have a chilling effect on meritorious challenges to patents . . . so would the threat of termination of the license have a similar effect." *Id.* at 738–39.

 This reasoning supports my conclusion that the plaintiff is not entitled to an order declaring the license agreements in this case terminated because the defendant has refused to make royalty payments during the pendency of this litigation.

Therefore, IT IS ORDERED that the motion of the plaintiff for partial summary judgment be and hereby is denied.