Paul C. FISHER, Plaintiff,

v.

The GILLETTE COMPANY, Defendant.

No. 80 C 4415.

United States District Court,
N. D. Illinois, E. D.

Jan. 20, 1981.

McWilliams, Mann & Zummer, Thomas F. McWilliams, Dennis M. McWilliams, Chicago, Ill., for plaintiff.

John J. Cavanaugh, Neuman, Williams, Anderson, Olson, Chicago, Ill., for proposed intervenor Hallmark Cards.

Philip J. Crihfield, J. Andrew Schlickman, Russell M. Baird, Sidley & Austin, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Paul C. Fisher ("Fisher") has sued The Gillette Company ("Gillette"), charging that Gillette's Eraser Mate pen infringes Fisher's 1969 United States Patent No. 3,425,779 (the "Fisher Patent") covering a "Pressurized Marking Instrument" (in common parlance, a ball-point pen). Hallmark Cards, Inc. ("Hallmark"), which has been Fisher's exclusive licensee since 1974, seeks to intervene as a third-party plaintiff against Fisher and as a co-plaintiff with Fisher against Gillette. For the reasons stated in this memorandum opinion and order, Hallmark's motion is granted.

Fisher complains vehemently, and Hallmark does not dispute, that Hallmark is seeking to assert inconsistent positions in this litigation:

(1) On the one hand Hallmark argues that the Fisher Patent is invalid. Apparently as the result of the dispute with Gillette over its claimed infringement, in which Gillette asserted such invalidity, Hallmark re-evaluated that question and notified Fisher in July 1980 that it too was of that opinion. Its notice went on to say that it was ceasing to pay any further royalties until a court ruled to the contrary. Ever since *Lear, Inc. v. Adkins*, 395 U.S. 653, 671, 89 S.Ct. 1902, 1911, 23 L.Ed.2d 610 (1969), overruled the licensee estoppel doctrine as articulated in *Automatic Radio Mfg. Co. v. Hazeltine Research, Inc.*, 339 U.S. 827, 836, 70 S.Ct. 894, 899, 94 L.Ed. 1312 (1950), that has been a permissible position for a patent licensee in this Circuit. See *Crane Co. v. Aeroquip Corp.*, 504 F.2d 1086, 1092 (7th Cir. 1974), *aff'g*, 364 F.Supp. 547 (N.D.Ill.1973); *Lee v. Lee Custom Engineering, Inc.*, 476 F.Supp. 361 (E.D.Wis. 1979).

(2) On the other hand Hallmark argues that if the Fisher Patent were held valid, Hallmark may also be barred from further action against Gillette under *Blonder-Tongue Laboratories v. University of Illinois Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971). Yet Hallmark's rights against Gillette as an infringer would not have been fully protected in this action because (a) Fisher has asked only for damages and not for injunctive relief against Gillette and (b) Fisher does not seek to recover such damages on behalf of Hallmark, but only on his own behalf.

Fisher also makes the partly-related argument that he views Hallmark's July 1980 notice as having *terminated* the license agreement, so that he would be free to resolve this litigation by a settlement and license agreement with Gillette were he so inclined. But on Hallmark's petition to intervene, the facts pleaded in its Third Party Complaint must be accepted as true. As another District Court put it in language approved by our Court of Appeals in *Clark v. Sandusky*, 205 F.2d 915, 918 (7th Cir. 1953):

The question on a petition to intervene is whether a well-pleaded defense or claim is asserted. Its merits are not to be determined. The defense or claim is assumed to be true on [a] motion to intervene, at least in the absence of sham, frivolity, and other similar objections. This Court cannot at this time endorse Fisher's position as a matter of law, particularly in light of the *Crane* and *Lee* decisions already referred to.

True enough, Hallmark's assertion of inconsistent positions may smack somewhat of the ancient joke of the unhappy wife who, in viewing her husband in mortal combat with a grizzly, roots, "Go it husband! Go it bear!" But that kind of ambivalence is specifically permitted by the alternative pleading provisions of Fed.R.Civ.P. ("Rule") 8(e)(2). There is no reason that Hallmark should not be able to argue vigorously for the *invalidity* of the Fisher Patent, standing ready however to bear the burdens and obtain the benefits (including those stemming from Gillette's liability) of its exclusive license if it loses that argument.

There is substantial force to Hallmark's argument that at least part of its claims qualify for filing under the mandatory intervention criteria of Rule 24(a)(2). But because that position would not necessarily control as to *all* the claims represented by the proposed Third Party Complaint and this Court views intervention as serving the interests of justice and judicial economy in any event, this Court is exercising its discretion to grant Hallmark leave to intervene under the permissive intervention provisions of Rule 24(b)(2). In so doing the Court rules specifically that "the intervention will [not] unduly delay or prejudice the adjudication of the rights of the original parties."

It is obvious that Hallmark claims an interest relating to the subject matter of the lawsuit. In the Court's view neither Fisher nor Gillette can adequately represent the several interests sought to be protected by Hallmark—indeed, the very necessity for Hallmark's alternative inconsistent assertions, which Fisher and Gillette are so careful to point out, itself evidences that Hallmark is uniquely in the position to evaluate in what manner its interests would *best* be served. In brief:

(1) As to Count I Gillette concedes (though Fisher does not) that Hallmark has the *right* to intervene under Rule 24(a)(2). In any case it is highly desirable that in a litigation between the patentee (Fisher) and a major alleged infringer (Gillette), the exclusive licensee with a substantial economic stake in the outcome (Hallmark) should be able to have its own rights adjudicated vis-a-vis both parties.

(2) As to Count II two factors point to the good sense of permitting its assertion in this action:

(a) the potential of a negotiated license from Fisher to Gillette while the status of the Fisher-Hallmark exclusive license would be left in limbo; and

(b) the claimed though disputed agreement between Fisher and Hallmark for the equal division of any net recovery from Gillette in this litigation (though it is true that Gillette has no interest in the outcome of that dispute, the mechanics of the litigation can readily be structured to avoid delaying adjudication of Gillette's rights pending the determination of the Fisher-Hallmark rights in that regard).

If Count II were the only claim asserted by Hallmark, the Court would be reluctant to permit its controversy with one litigant to affect the entire litigation. Because that is not at all so, the Court exercises its discretion in favor of intervention on Count II as well.

(3) As to Count III the situation here does not differ in kind from the common third party complaint in which a defendant-cross-plaintiff in (say) a product liability case argues that it is not liable to plaintiff, but that *if it is* another defendant is obligated to indemnify it for that liability. Gillette's argument that "the result [of arguing alternatively for the invalidity and validity of the Fisher Patent] would be a nullity" ignores the practical realities of the position in which Hallmark finds itself.

By granting Hallmark's motion the Court avoids circuitous action and permits the rights of *all* interested parties to be adjudicated fully in this proceeding. Accordingly Hallmark is granted leave instanter (1) to intervene as a third-party plaintiff against Fisher and as a co-plaintiff with Fisher against Gillette and (2) to file its third party complaint against Fisher and Gillette in the form already tendered by Hallmark. Each of Fisher and Gillette is ordered to answer or otherwise plead to that third party complaint on or before February 9, 1981.