**TELECTRONICS PTY LTD., Plaintiff,**

v.

**CORDIS CORPORATION, Defendant.**

**No. Civ. 4–82–62.**

United States District Court,
D. Minnesota,
Fourth Division.

March 5, 1982.

---

Henry H. Feikema, Smith, Juster, Feikema, Malmon & Haskvitz, Minneapolis, Minn., for plaintiff.

Henry D. Pahl, Jr., Kenway & Jenney, Boston, Mass., and Douglas B. Farrow, Williamson, Bains, Moore & Hansen, Minneapolis, Minn., for defendant.

## MEMORANDUM AND ORDER

MacLAUGHLIN, District Judge.

The complaint in this action seeks a judicial declaration of invalidity of a patent owned by the defendant, Cordis Corporation. The plaintiff, Telectronics Pty Ltd. (TPL), holds a license under the challenged patent. The matter is now before the Court on TPL's motion for a preliminary injunction permitting it to withhold payments of royalties under the license during the pendency of the action while restraining Cordis from terminating the license in the event the patent is found to be valid. The motion will be denied.

FACTS

On June 1, 1979, Cordis and TPL executed a license agreement. At that time, TPL was unable to afford the expense of challenging the patent owned by Cordis. It knew, however, that another company, Cardiac Pacemakers, Inc., was challenging the validity of the patent. Article VII(B) of the license agreement provides:

> Cordis is now involved in litigation with Cardiac Pacemakers Inc. of Minnesota, over the patent rights herein licensed. *Royalty obligation hereunder shall terminate immediately as to any patent rights found invalid in any final unappealable judicial decision including that litigation.* Furthermore, until that litigation is concluded, the TPL royalty

obligation as to U.S. Patent Rights shall not exceed four hundred thousand ($400,-000.00) if TPL is in operation in Group I or Group II and $500,000.00 if in Group III.

(Emphasis added). On August 31, 1981, the trial court in the referenced litigation ruled that the Cordis patent is invalid. *Cardiac Pacemakers, Inc. v. Cordis Corp.*, CIVIL 4–77–427 (D.Minn. Aug. 31, 1981), *appeal docketed*, No. 81–2048 (1981). As of the date of this Memorandum and Order, the briefs for the appeal have been filed, but it has not yet been set on the calendar for argument.

The license agreement also contains other terms regarding termination of the license. Article VII(A) grants Cordis an option to terminate the agreement if TPL defaults on its obligations. Article VII(A) provides:

If TPL fails to make any statement or report required herein, fails to make any payment of royalties as herein provided for, or fails to perform any other obligation herein provided for, Cordis may notify TPL in writing of its intention to cancel this Agreement specifying the default complained of, and this Agreement shall then terminate sixty (60) days after such notice unless TPL makes good and cures the default complained of before the end of said sixty (60) days.

Article VII(D) grants TPL an option to terminate without any cause. It provides:

At any time, TPL may, at its option, terminate the license herein granted, upon sixty (60) days written notice to Cordis to that effect.

Several months prior to the decision by the trial court in *Cardiac Pacemakers, Inc. v. Cordis Corp.*, TPL started withholding the royalty payments due under the agreement. Cordis has demanded payment and has given the notice required by Article VII(A). In this lawsuit, TPL now challenges the validity of the Cordis patent, relying on the trial court adjudication of invalidity in *Cardiac Pacemakers, Inc. v. Cordis Corp.* TPL seeks to restrain Cordis from exercising its option to terminate pursuant to Article VII(A) of the license agree-

ment, while being relieved of its obligation to pay royalties pending the appeal in *Cardiac Pacemakers, Inc. v. Cordis Corp.*

## DISCUSSION

On a motion for a preliminary injunction, the Court must consider the following factors:

[W]hether a preliminary injunction should issue involves consideration of (1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest.

*Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109, 114 (8th Cir. 1981). The movant's likelihood of success on the merits and the threat of irreparable harm are the primary factors.

The plaintiff contends that it has established a strong likelihood of success on the merits by citing *Cardiac Pacemakers, Inc. v. Cordis Corp.* and arguing that if the decision is upheld on appeal, then Cordis will be collaterally estopped from contesting the merits of the challenge to the validity of the patent in this action. *See Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1970). The plaintiff contends that it will suffer irreparable harm if it must continue making royalty payments in order to preserve its rights under the licensing agreement. The plaintiff contends that it is unclear how much, if any, of the royalty payments it may be able to recover if the patent is found invalid by the Eighth Circuit.

The motion before the Court involves an issue left open by the United States Supreme Court in *Lear, Inc. v. Adkins*, 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610 (1969) in which the Supreme Court overturned the doctrine of licensee estoppel which theretofore had prohibited a licensee from contesting the validity of the patent. In *Lear*, the Supreme Court enunciated the public policy of fostering "full and free competition in the use of ideas which are in

reality a part of the public domain." 395 U.S. at 670, 89 S.Ct. at 1911. To foster this policy, the Supreme Court determined that licensees must be permitted to challenge the validity of patents, and must be given an economic incentive to test the validity at the earliest opportunity. Therefore, the *Lear* Court held that a licensee cannot be compelled to continue paying royalties due under a license agreement during the pendency of a lawsuit challenging the validity of a patent. 395 U.S. at 673, 89 S.Ct. at 1912. The Supreme Court did not address the issue of whether the licensor could terminate the license agreement for nonpayment of royalties rather than compelling payment of the royalties.

■ It appears from the language of the license agreement that the parties had in mind the possibility that this issue would arise. The license agreement expressly provides that Cordis may terminate the agreement if TPL fails to make payments of royalties. It also expressly provides, "Royalty obligation hereunder shall terminate immediately as to any patent rights found invalid in any *final unappealable* judicial decision, including [the *Cardiac Pacemakers, Inc. v. Cordis Corp.*] litigation." TPL has given no reason why the trial court's ruling in the *Cardiac Pacemakers, Inc. v. Cordis Corp.* litigation should permit it to rewrite this contract by eliminating Cordis' option to terminate for nonpayment of royalties. TPL certainly contemplated the possibility that the trial court in that litigation would hold the patent to be invalid, yet Article VII(B) only applies to a "final unappealable" decision. Because the matter is currently on appeal, Article VII(B) has no application to this case.

Moreover, the Eighth Circuit Court of Appeals has held that *Lear* does not prevent a licensor from exercising a clause permitting termination of a license for nonpayment of royalties. In *Nebraska Engineering Corp. v. Shivvers*, 557 F.2d 1257 (8th Cir. 1977), a licensee filed an action challenging the underlying patent, and simultaneously filed a motion to enjoin the licensor from terminating the license agreement.

The district court ordered that the royalty payments be deposited with an escrow agent pending the decision on the merits of the challenge to the patent's validity. The court of appeals reversed, holding that the licensor had the right to terminate the license agreement if the licensee breached its obligation to pay the royalties. The court declined to rule on the issue of whether the licensee would be entitled to recover the royalties if it succeeded in having the patent declared invalid.

The *Shivvers* holding directly controls this motion. The fact that the underlying patent was held invalid in a different lawsuit does not distinguish the facts of this action from *Shivvers*. The adjudication of invalidity of the patent is currently on appeal, and the Court will not speculate as to the outcome of the appeal.

■ As in *Shivvers*, this Court need not rule at this time on how much, if any, of the royalty payments made by TPL to Cordis may be recoverable should the patent ultimately be invalidated. It is sufficient to note that while the Eighth Circuit has not yet addressed this issue, a number of other circuits have. *See, e.g., Precision Shooting Equipment Co. v. Allen*, 646 F.2d 313 (7th Cir. 1981); *Warner-Jenkinson Co. v. Allied Chemical Corp.*, 567 F.2d 184 (2d Cir. 1977); *St. Regis Paper Co. v. Royal Industries*, 552 F.2d 309 (9th Cir.), *cert. denied*, 434 U.S. 996, 98 S.Ct. 633, 54 L.Ed.2d 490 (1977); *Atlas Chemical Industries, Inc. v. Moraine Products*, 509 F.2d 1 (6th Cir. 1974).

■ Finally, the Court finds that there is no evidence before it that Cordis would be unable to repay the royalties in the event that it was ordered to do so. Therefore, the option of requiring royalty payments to be paid into an escrow account is inappropriate in this action. *Shivvers*, 557 F.2d at 1260; *see Precision Shooting Equipment*, 646 F.2d at 321.

Accordingly, IT IS HEREBY ORDERED that the plaintiff's motion for a preliminary injunction is denied.

Entry of this Order is hereby stayed for ten days.