CORDIS CORPORATION, Appellee,

v.

MEDTRONIC, INC., Appellant.

Appeal No. 85-1987.

United States Court of Appeals, Federal Circuit.

Dec. 17, 1985.

Lawrence C. Brown, Faegre and Benson, of Minneapolis, Minn., argued for appellant. With him on the brief was Elizabeth L. Taylor. Grady J. Frenchick, Medtronic, Inc., of Minneapolis, Minn., of counsel.

Granger Cook, Jr., Cook, Wetzel & Egan, Ltd., of Chicago, Ill., argued for appellee. With him on the brief was Gary W. McFarron. Henry W. Collins, Cordis Corp., Miami, Fla., of counsel.

Before KASHIWA, Circuit Judge, SKELTON, Senior Circuit Judge, and BISSELL, Circuit Judge.

BISSELL, Circuit Judge.

This appeal is from the Order of the District Court for the Southern District of Florida, No. 84-2479-CIV-Atkins, (January 10, 1985), 606 F.Supp. 132, granting the motion for relief *pendente lite* of Cordis Corporation (Cordis):

(a) permitting Cordis to deposit into an escrow account all future royalty payments due Medtronic, Inc. (Medtronic) pursuant to the license agreement between the parties; and

(b) enjoining Medtronic from terminating the license agreement because of Cordis' failure to make royalty payments pursuant to the agreement. This in effect protects Cordis from patent infringement or breach of contract counterclaims.

The issuance of the Order by the district court is vacated. The motion for relief *pendente lite* is remanded for further consideration not inconsistent with this opinion.

## I

Cordis filed suit against Medtronic seeking a declaratory judgment that the two licensed Medtronic patents, U.S. Patent Nos. 3,902,501 ('501) and 3,939,843 ('843), are invalid (Count I of the Complaint) and that the license agreement between Cordis and Medtronic "is void in its inception" (Count II of the Complaint). Contemporaneous with filing of the declaratory judgment action, Cordis moved for an order to establish a court escrow account into which the royalty payments due Medtronic, *pendente lite*, would be deposited. Additionally, Cordis sought a preliminary injunction to enjoin Medtronic from terminating the license agreement during the pendency of the patent invalidity suit.

The district court, relying on *Precision Shooting Equipment Co. v. Allen*, 646 F.2d 313, 210 USPQ 184 (7th Cir.), *cert. denied*, 454 U.S. 964, 102 S.Ct. 503, 70 L.Ed.2d 379 (1981), and *Atlas Chemical Industries, Inc. v. Moraine Products*, 509 F.2d 1, 184 USPQ 281 (6th Cir.1974), granted the motion and permitted Cordis to deposit any royalty payments due Medtronic *pendente lite* into an interest bearing escrow account, with all funds accumulated in the escrow account to be paid to the prevailing party. The district court enjoined Medtronic from terminating the license agreement during the pendency of the action.

Consequently, the issue on appeal to this court is whether the district court properly granted the preliminary injunction and Cordis' motion for establishment of the escrow account.

## II

■ Our jurisdiction over this appeal arises under 28 U.S.C. § 1292(a)(1) and (c) which permits interlocutory appeals from trial court orders granting injunctions. Because a portion of the district court's interlocutory order enjoins Medtronic from terminating the license agreement, we have jurisdiction over the whole order, including the portion establishing a court escrow account for depositing royalty payments.

*Jaffee v. United States,* 592 F.2d 712 (3d Cir.1979), *on remand,* 468 F.Supp. 632 (D.N.J.1979), *cert. denied,* 441 U.S. 961, 99 S.Ct. 2406, 60 L.Ed.2d 1066 (1979), *aff'd,* 663 F.2d 1226 (3d Cir.1981), *cert. denied,* 456 U.S. 972, 102 S.Ct. 2234, 72 L.Ed.2d 845 (1982); *see also United States v. Connolly,* 716 F.2d 882, 885 (Fed.Cir.1983) (Under 28 U.S.C. § 1292(d)(2), this court's scope of review is not limited to the certified question. We can consider all questions material to the correctness of the interlocutory order.)

### III

The Supreme Court, in *Lear, Inc. v. Adkins,* 395 U.S. 653, 671, 89 S.Ct. 1902, 1911, 23 L.Ed.2d 610, 162 USPQ 1, 8 (1969), held that a licensee to a patent license agreement is not estopped from contesting the validity of the patent subject to the agreement. *Lear* further held that licensees cannot be required to continue to pay royalties during the time they are challenging patent validity in the courts. *Id.* at 673, 89 S.Ct. at 1912, 162 USPQ at 9. In *C.R. Bard, Inc. v. Schwartz,* 716 F.2d 874, 219 USPQ 197 (Fed.Cir.1983), this court held that a patent licensee may seek a federal declaratory judgment to declare a patent, subject to a license, invalid without prior termination of the license.

It is well settled that the purpose of an interlocutory injunction is to preserve the status quo and to protect the respective rights of the parties pending a determination on the merits. *Atlas Powder Co. v. Ireco Chemicals,* 773 F.2d 1230, 227 USPQ 289 (Fed.Cir.1985); *Smith International, Inc. v. Hughes Tool Co.,* 718 F.2d 1573, 219 USPQ 686 (Fed.Cir.), *cert. denied,* 464 U.S. 996, 104 S.Ct. 493, 78 L.Ed.2d 687, 220 USPQ 385 (1983); *accord Cate v. Oldham,* 707 F.2d 1176 (11th Cir.1983). The status of these parties before the district court is that of a patentee-licensor of two patents, each presumptively valid pursuant to 35 U.S.C. § 282, and that of a licensee of those patents.

■ This court exercises a very narrow scope of review over the district court's grant of injunctive relief. *Smith International,* 718 F.2d at 1579, 219 USPQ at 691. The district court's determination can be overturned only upon a showing that it abused its discretion, committed an error of law, or seriously misjudged the evidence. *Rogers v. Hill,* 289 U.S. 582, 587, 53 S.Ct. 731, 733, 77 L.Ed. 1385 (1933); *National File Ins. Co. v. Thompson,* 281 U.S. 331, 338, 50 S.Ct. 288, 291, 74 L.Ed. 881 (1930); *Meccano, Ltd. v. John Wanamaker,* 253 U.S. 136, 141, 40 S.Ct. 463, 465, 64 L.Ed. 822 (1920); *Smith International,* 718 F.2d at 1579, 219 USPQ at 691.

In determining whether to grant or deny the requested injunction, a court must exercise sound discretion and examine the appropriate factors in granting the motion. The factors to be considered in granting a preliminary injunction in the Federal Circuit are the same as those of the Eleventh Circuit. The district court must examine and balance the parties' asserted rights, the acts sought to be enjoined, the likelihood that the movant will prevail on the merits, the irreparable nature of the harm if the injunction is not granted, and whether the public interest is better served by issuing rather than denying the injunction. *Smith International,* 718 F.2d at 1579, 219 USPQ at 690–91; *S.J. Stile Associates, Ltd. v. Snyder,* 646 F.2d 522, 525 (CCPA 1981); *accord Cate v. Oldham,* 707 F.2d 1176 (11th Cir.1983); *Harris Corp. v. National Iranian Radio and Television,* 691 F.2d 1344 (11th Cir.1982); *see generally Atlas Powder Co.,* 773 F.2d at 1232–34, 227 USPQ 291–93; *Roper Corp. v. Litton Systems, Inc.,* 757 F.2d 1266, 225 USPQ 345 (Fed.Cir.1985).

■ We find that several errors of law and a misjudgment of evidence occurred when the district court considered the preliminary injunction factors. Initially, the district court erred in ruling that the *Lear* decision is implicit authority for permitting a licensee to deposit royalties due *pendente lite* into an escrow account pending a determination on the merits. A second error of law appears in the district court's reading

that the Sixth Circuit *Troxel (I)*[1] opinion is authority for the proposition that a licensee may never recoup royalties. Finally, it was a misjudgment of evidence to use evidence of patent invalidity to establish the movant's likelihood of success on the claim that the license "is void in its inception."

Turning to the error committed in reading the *Lear* opinion, we find no authority in *Lear* for establishing an escrow account for royalties due *pendente lite* or preliminarily enjoining a licensor from cancelling the license agreement and, thus, from counterclaiming for patent infringement when this material breach of the license occurs.

Cordis argued and the district court agreed that the Supreme Court decision in *Lear* encouraging vigorous and prompt litigation of invalid patents supports the entry of the requested interlocutory relief. In *Lear,* the Court examined the interests of the licensor, the licensee, and the general public in light of the federal patent policy encouraging prompt adjudication of patent validity, stating:

> Surely the equities of the licensor do not weigh very heavily when they are balanced against the important public interest in permitting full and free competition in the use of ideas which are in reality a part of the public domain. Licensees may often be the only individuals with enough economic incentive to challenge the patentability of an inventor's discovery. If they are muzzled, the public may continually be required to pay tribute to would-be monopolists without need or justification. We think it plain that the technical requirements of contract doctrine must give way before the demands of the public interest in the typical situation involving the negotiation of a license after a patent has issued.

*Lear,* 395 U.S. at 670–71, 89 S.Ct. at 1911, 162 USPQ at 8.

This public policy statement *does* permit a licensee to cease payments due under a contract while challenging the validity of a patent. It *does not* permit the licensees to avoid facing the consequences that such an action would bring. The holding of *Lear* only prevents the affirmative enforcement by the licensor of the royalty payment provisions of the license agreement while the patent's validity is being challenged by the licensee.

We believe that the reasoning succinctly stated by the Second Circuit in *Warner-Jenkinson Co. v. Allied Chemical Corp.,* 567 F.2d 184, 193 USPQ 753 (2d Cir.1977) and followed by the Eighth Circuit in *Nebraska Engineering Corp. v. Shivvers,* 557 F.2d 1257, 195 USPQ 227 (8th Cir.1977) is in keeping with the holding of and policy statements in *Lear:*

> We believe that if the plaintiffs wish to continue to invoke the protections of their licensing agreements, they should be required to continue paying their royalties to the defendant. Ultimately, all royalties paid after the filing of the complaint *may* have to be returned to the plaintiffs.... At present, plaintiffs already have the option of withholding royalties and thereby breaching the licensing agreement; of course, they would then run the risk of an injunction if they should lose on the merits. It would not be fair for the plaintiffs to be allowed simultaneously to reap all the benefits of the licensing agreement and to deprive the licensor of all his royalties. Patents are presumed to be valid, 35 U.S.C. § 282; until invalidity is proven, the patentee should ordinarily be permitted to enjoy the fruits of his invention. The principal effect of an escrow arrangement would be to put undeserved pressure on the defendant.

*Warner-Jenkinson,* 567 F.2d at 188, 193 USPQ at 753 (emphasis added).

In addition to the misapplication of *Lear* in evaluating the rights and obligations of the parties and the interest of the public, the district court made errors of law in

---

**1.** *Troxel Manufacturing Co. v. Schwinn Bicycle Co.,* 465 F.2d 1253, 175 USPQ 65 (6th Cir.1972)   (*Troxel I*).

determining whether irreparable harm would occur to the licensee if the preliminary injunction was not granted.

■ To support its request for injunctive relief, Cordis argued that absent such relief it would experience irreparable harm in one of the following four ways: (1) being exposed to a potential patent infringement suit, (2) risking forfeiture of royalties paid while litigating the validity of the patents,[2] (3) foregoing contesting the validity of the patents, or (4) terminating any manufacture, use or sale of the tined leads covered by the '501 and '843 patents.

Cordis argued to the district court that any one of these alternatives, when balanced against the harm suffered by Medtronic in receiving delayed royalty payments, tips the scales of equity in favor of permitting royalties due *pendente lite* to be deposited into an interest bearing escrow account.

With regard to Cordis' first, third, and fourth assertions of irreparable harm, for the reasons stated above, *Lear* provides no reprieve. Moreover, Cordis made no showing that Medtronic is financially irresponsible or might be judgment-proof at the end of the litigation. "Only a viable threat of serious harm which cannot be undone authorizes exercise of a court's equitable power to enjoin before the merits are fully determined. (Citation omitted). A preliminary injunction will not issue simply to prevent a mere possibility of injury, even where prospective injury is great." *S.J. Stile*, 646 F.2d at 525; *See Smith International*, 718 F.2d at 1579, 219 USPQ at 692.

■ With regard to Cordis' second assertion of irreparable harm, the district court's reliance on *Troxel (I)* is misplaced. Neither the *Troxel (I)* nor *Troxel (II)* decisions by the Sixth Circuit prohibit the licensee from recouping royalties paid *pendente lite* once the patent subject to the license agreement is proved invalid. The *Troxel* decisions only prohibit the licensee from recovering

and retaining royalties paid or due prior to the adjudication of invalidity when the challenge to the patent was made by a third party. Since the district court improperly evaluated the rights of the parties and the interest of the general public under *Lear*, we need not address the risk of forfeiture question any further than the district court's application of *Troxel (I)*. Nor do we decide which party is entitled to royalties paid or accrued *pendente lite*.

■ Finally, the district court erred in evaluating the likelihood of success factor. To show likelihood of success on the merits, Cordis offered only the affidavit of an engineer employed by Medtronic's competitor, Pacesetter, which set forth that Pacesetter publicly disclosed and/or developed certain devices covered by claims of the patents in suit prior to Medtronic's alleged date of invention. The district court's error occurred in using evidence of patent invalidity to establish the movant's likelihood of success on the claim that the license "is void in its inception" (Count II). The affidavit by an employee of Medtronic's competitor setting forth facts is arguably sufficient to prove that the patents in suit are invalid under the provisions of 35 U.S.C. § 102(a) and (b). However, this affidavit alone is insufficient to support the movant's likelihood of success on the second count of the complaint, that is, that the license agreement "is void in its inception." Patents are issued by the government after examination and evaluation of the patent application by the United States Patent and Trademark Office and are presumed valid once issued. 28 U.S.C. § 282. As observed by the Sixth Circuit, "Congress has not seen fit to create an implied warranty of validity in license agreements." *Troxel (I)*, 465 F.2d at 1260, 175 USPQ at 70. "Absent fraud or misconduct, a patentee should not be held responsible for the issuance of an invalid patent." *Id.* at 1259, 175 USPQ at 69.

---

**2.** Cordis cites the *Troxel I* decision and the subsequent *Troxel Manufacturing Co. v. Schwinn Bicycle Co.*, 489 F.2d 968, 180 USPQ 290 (6th Cir.1973), *cert. denied*, 416 U.S. 939, 94 S.Ct.

1942, 40 L.Ed.2d 290, 181 USPQ 417 (1974) (*Troxel II*), decision as authority for this position.

 

Consequently, because the analysis underlying the district court's order is erroneous, the order is vacated and the motion remanded for further consideration not inconsistent with this opinion.

VACATED AND REMANDED.