**INTERMEDICS INFUSAID, INC. and the Infusaid Company, Appellants,**

v.

**The REGENTS OF the UNIVERSITY OF MINNESOTA, Appellee.**

No. 85–2811.

United States Court of Appeals, Federal Circuit.

Oct. 22, 1986.

---

Neil B. Siegel, of Sughrue, Mion, Zinn, MacPeak & Seas, Washington, D.C., argued for appellants. With him on the brief were Edwin A. McCabe, George P. Field, David S. Godkin, and Valerie S. Carter, of McCabe/Gordon, Boston, Mass.

Scott C. Moriearty, of Bingham, Dana & Gould, Boston, Mass., argued for appellee. With him on the brief was Kenneth J. Withers, of Bingham, Dana & Gould, Boston, Mass.

Before BALDWIN, NIES and ARCHER, Circuit Judges.

NIES, Circuit Judge.

Intermedics Infusaid, Inc., and The Infusaid Company appeal from the August 22, 1985, orders of the United States District Court for the District of Massachusetts (Tauro, J.), (1) denying Intermedics' motion to enjoin an action between the parties in a Minnesota state court and (2) granting a motion to stay the action before the federal district court. We affirm.

## I.

In May, 1973, United States Patent No. 3,731,681, issued to a group of employees of the University of Minnesota, with the University named as assignee. The patent discloses and claims an implantable drug infusion pump—a device designed to be implanted in the human body for pumping drugs on a constant basis to a specific organ or location in the body.

In October, 1980, the University granted an exclusive license of the patent to Metal Bellows Corporation, who in turn granted an exclusive, royalty-free sublicense to its subsidiary, Infusaid Corporation. In January, 1981, Infusaid Corporation entered into a joint venture with an unrelated company, Intermedics Infusaid, Inc., a subsidiary of Intermedics, Inc. The purpose of the joint venture (which operates as Infusaid Company) was, in part, to develop and

commercialize the drug pump. Under the terms of the joint venture agreement, Infusaid Corporation granted an exclusive, royalty-free sub-license to the Venture.[1]

The business relationship apparently soured and, in May, 1982, Infusaid Corporation and its parent, Metal Bellows, sued Intermedics (parent and subsidiary) in the United States District Court for the District of Massachusetts, seeking dissolution of the joint venture and an accounting and distribution of their interests therein (the Venture suit). During a hearing in the course of that suit, counsel for Intermedics at one point asserted that the University's patent was worthless and moved to amend its complaint to so allege. That motion was denied. After a trial and an appeal, on September 21, 1984, the district court (Judge McNaught) issued an injunction which granted exclusive possession of the assets and control of the Venture to Intermedics. That order did not, however, terminate the suit as an accounting remained necessary.

On or about October 17, 1984, the University filed a declaratory judgment action in Minnesota state court against Metal Bellows, Infusaid Corp., Intermedics (parent and subsidiary), and the Venture seeking a declaratory judgment that the original license agreement with Metal Bellows "is valid and enforceable in all respects" against the defendants and asking the Minnesota court to determine the amount of royalties owed (the Minnesota suit). In defense of that suit, Intermedics and the Venture asserted, *inter alia*, a royalty-free license.

In November, 1984, Intermedics reacted to the Minnesota suit with motions in the Venture suit (then at the accounting stage) to make the University a party and to enjoin the Minnesota suit. Their argument was that the validity of the patent was germane to those proceedings. Judge McNaught denied the motions on March 20, 1985. In his order of that date, Judge McNaught observed that the only issue concerning the University's patent was the value of the patent license at the date of dissolution of the joint venture "at which time the patent had not been declared invalid and carried a presumption of validity, whether or not it had been challenged." Doubts of the parties with respect to validity were considered germane to the evaluation of the license, but the actual validity of the patent was held to be irrelevant.

On May 15, 1985, the Minnesota court issued an order requiring Intermedics[2] to "plead any additional affirmative defenses not contained in its Answer, including patent invalidity ... no later than June 12, 1985, or [Intermedics] shall be precluded from raising any such defense as an affirmative defense to this action." Intermedics did not afford itself of that opportunity. Instead, on June 12, 1985, approximately 9 months after the Minnesota suit began and discovery was virtually complete, Intermedics filed the instant action in the Massachusetts district court against the University, seeking a declaratory judgment that the University's patent is invalid and unenforceable and to recover royalties they had previously paid (the Patent declaratory judgment action).[3] As part of the relief requested, Intermedics sought to enjoin proceedings in the Minnesota suit and filed a motion seeking that relief immediately. Two reasons were put forth for the requested injunction: (1) the Minnesota suit was an attempt by the University to circumvent the federal district court's ex-

1. Because of the confusing names, the Infusaid Company will be identified herein simply as the Venture.

2. Hereinafter, "Intermedics" refers not only to the parent and subsidiary but to the Venture as well.

3. Intermedics also began escrowing royalties, rather than paying them to the University as required by the license. In so doing, they relied on *Cordis Corp. v. Medtronic, Inc.,* 606 F.Supp. 132, 225 USPQ 135 (S.D.Fla.1985), which was, however, subsequently reversed on appeal to this court. 780 F.2d 991, 228 USPQ 189 (Fed. Cir.1985), *cert. denied,* — U.S. —, 106 S.Ct. 1971, 90 L.Ed.2d 655 (1986).

clusive jurisdiction under the patent laws,[4] and (2) Intermedics would suffer irreparable harm from being "subjected to multiple and repetitive litigation and the risk of inconsistent judgments." The University countered with a motion for a stay of the Patent declaratory judgment action before the federal district court.

On August 22, 1985, the district court refused to enjoin the Minnesota suit and granted a stay of the Patent declaratory judgment action. Intermedics timely appealed to this court seeking reversal of both orders of the district court.[5]

During the pendency of this appeal, summary judgment was entered for the University in the Minnesota suit with an award made in the sum of $235,245.35. *Regents of the University of Minnesota v. Metal Bellows Corp.*, No. 84–16041 (4th D.Minn. 1986) (Durda, J.). The validity of the University's patent is not mentioned in the opinion. Intermedics has appealed that judgment to the Minnesota appeals court.

## II.

### Issues

1. Are the district court's interlocutory orders appealable?

2. Did the district court improperly decline to enjoin the state court proceedings?

3. Did the district court improperly stay its own proceedings?

## III.

This case falls into the familiar pattern of a suit by the licensor of a patent in state court to secure royalties due under a license agreement and a counterattack by the licensee in federal court to have the patent declared invalid. In this federal declaratory judgment action, the licensee sought to enjoin the state court proceedings which was denied. The order of the court denying such request is a denial of an injunction and is, therefore, appealable under 28 U.S.C. § 1292(c)(1) (1982).

The Anti-Injunction Act, 28 U.S.C. § 2283 (1982 & Supp. II 1984) provides:

A court of the United States may not grant an injunction to stay proceedings in a State court *except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.* (Emphasis added.)

Intermedics first argues that the requested injunction of state proceedings falls within the exception, underlined above, which requires, per Intermedics, a federal court to exercise its injunctive power "in aid of its jurisdiction." Intermedics argues that 28 U.S.C. § 1338(a) (1982), the provision giving the federal district courts "exclusive" jurisdiction over patent suits, codifies a policy that patent questions be decided in the federal courts.

While made in a different procedural context, this argument was considered and rejected by this court in *In re Oximetrix, Inc.*, 748 F.2d 637, 641–42, 223 USPQ 1068, 1071 (Fed.Cir.1984). Contrary to Intermedics argument, there are no policies reflected in acts of Congress which require

---

4. Intermedics' motion stated:
   Though artfully worded to sound in contract, the University's complaint in the Minnesota state court action on its face raises questions concerning the scope and validity of the Patent. By the filing of the Minnesota state complaint, the University is attempting to obtain jurisdiction for the state court over a case that arises under the patent laws of the United States and theregy circumvent this Court's exclusive jurisdiction over cases arising under the patent laws, pursuant to 28 United States Code, Section 1338(a). Accordingly, a stay of the Minnesota state court action is necessary in aid of this Court's exclusive jurisdiction over cases arising under the

patent laws and is necessary to protect and effectuate this Court's judgments.

5. The order of the district court technically "dismissed" the Patent declaratory judgment action without prejudice to "either party moving to restore it to the docket" upon "final disposition" of the state court action. The court entered a "dismissal" rather than a "stay" expressly stating that a dismissal would avoid the inconvenience to the parties of answering status calls. We will refer to the action by the court as a "stay" inasmuch as whether it is a stay or a dismissal without prejudice is immaterial to our reaching the merits.

that the federal courts enjoin (or, as asserted in *Oximetrix,* "remove") a state court contract suit seeking royalties payable under a patent license wherein the state court is or could be asked by the defendant to rule on the validity of the patent. The Supreme Court held to the contrary in *Lear, Inc. v. Adkins,* 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610 162 USPQ 1 (1969).

In *Lear v. Adkins,* patent invalidity was held to be a defense which could be made by a licensee to a claim for royalties in state court. Although Intermedics was given that opportunity in the Minnesota suit by a specific order of that court, Intermedics failed to do so. The University argues that Intermedics' failure in the Minnesota suit to raise that defense, which it could have litigated there and which the University asserts was a mandatory counterclaim, makes the issue of validity of the patent *res judicata* between the parties. Intermedics urges that the order of the Minnesota court was narrow and that it is precluded from asserting invalidity *only* in the Minnesota suit.

We do not, of course, have the issue of *res judicata* before us. At the time of the federal court order under review, the Minnesota suit had not reached judgment. Intermedics' objective in attempting to enjoin the state suit is, however, candidly stated. It seeks to prevent the entry of a judgment which could possibly be *res judicata* of the issue of patent validity. If the state court judgment is ultimately held to subsume the issue of patent validity, Intermedics will have bypassed the opportunity it had to challenge the patent, and its tactic of not litigating the defense of invalidity in state court will turn out to have been legally disastrous. *See Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 380–81, 105 S.Ct. 1327, 1331–32, 84 L.Ed.2d 274 (1985); *Becher v. Contoure*

*Laboratories, Inc.,* 279 U.S. 388, 391–92, 49 S.Ct. 356, 357–58, 73 L.Ed. 752 (1929). That question, however, awaits future resolution.[6]

Alternatively, Intermedics argues that the requested injunction should have been granted to protect and effectuate the federal court's ability to grant relief. This argument is based on the premise that a final state court judgment would improperly force Intermedics to pay royalties which Intermedics could not recoup even if the patent were later found invalid. This court held in *Cordis Corp. v. Medtronics, Inc.,* 780 F.2d 991, 228 USPQ 189 (Fed.Cir.1985), *cert. denied,* — U.S. —, 106 S.Ct. 1971, 90 L.Ed.2d 655 (1986), that a licensee is not entitled either to escrow royalties or to preclude a licensor from terminating the license agreement for breach by reason of nonpayment of royalties. Because Intermedics wishes to maintain its license, Intermedics must continue to pay under the holding in *Cordis.* Moreover, Intermedics' premise that it is entitled to recoup its royalties is not established precedent in this court. Nor has the court taken the contrary view. Nor is the issue of a licensee's entitlement to recoupment of royalties ripe for decision in this case at this stage of proceedings. If that issue is affected in this case by Intermedics' failure to raise the defense of invalidity in the Minnesota suit, that again follows from Intermedics' litigation strategy, and does not create a need for the district court to enjoin the Minnesota suit to effectuate a judgment.

■ For the above reasons, we are unpersuaded that Intermedics' request for an injunctive order staying the Minnesota suit falls within an exception to 28 U.S.C. § 2283.[7]

---

6. In *Lear v. Adkins,* the state court stayed its own proceedings on remand in deference to a federal patent declaratory judgment action. *Adkins v. United States District Court,* 431 F.2d 859, 167 USPQ 16 (9th Cir.), *cert. dismissed,* 400 U.S. 921, 91 S.Ct. 181, 27 L.Ed.2d 182 (1970). The Minnesota court here did not have that option

since Intermedics *waived* the issue in the state court.

7. Intermedics does not argue that the requested injunction is "expressly authorized by Act of Congress."

## IV.

Before addressing the merits of the order "dismissing" the patent suit, we must first consider the University's argument that we have no jurisdiction over that order.

The University asserts that despite the technical entry of a dismissal, *supra* note 5, the order is simply a "stay" and not a final appealable order. The cases are legion that where a court simply stays its own proceedings, generally that type of order is not appealable. *See Gould v. Control Laser Corp.*, 705 F.2d 1340, 1341, 217 USPQ 985 (Fed.Cir.) *cert. denied*, 464 U.S. 935, 104 S.Ct. 343, 78 L.Ed.2d 310, 220 USPQ 385 (1983). Also, this general proposition has been held to apply where the reason for the stay is to await the decision in an earlier filed state court case between the parties. *Microsoftware Computer Systems v. Ontel Corp.*, 686 F.2d 531, 534 (7th Cir.1982); *Cotler v. Inter-County Orthopaedic Association*, 526 F.2d 537, 541 (3d Cir.1975); *Serrano v. Playa Associates, Inc.*, 390 F.2d 593, 594 (1st Cir.1968); *Jackson Brewing Co. v. Clarke*, 303 F.2d 844, 845 (5th Cir.), *cert. denied*, 371 U.S. 891, 83 S.Ct. 190, 9 L.Ed.2d 124 (1962); *Mottolese v. Preston*, 172 F.2d 308, 309 (2d Cir.1949).

Intermedics counters with arguments that it has been effectively placed out of court by the district court's action and, thus, the dismissal/stay order must be treated as an appealable order under the finality principles set forth in *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 10, 103 S.Ct. 927, 934, 74 L.Ed.2d 765 (1983).

We need not resolve this difficult issue. The dismissal/stay order in this case need not itself provide an independent jurisdictional basis for an appeal. Unquestionably this court properly has an appeal before it based on the court's refusal to enjoin the Minnesota suit.

■ In connection with review of that appealable interlocutory order, other interlocutory orders, which ordinarily would be nonappealable standing alone, may be reviewed. *See, e.g., Shaffer v. Globe Protection, Inc.*, 721 F.2d 1121 (7th Cir.1983); *New York v. Nuclear Regulatory Commission*, 550 F.2d 745 (2d Cir.1977). Whether an appellate court exercises this "doctrine of pendent jurisdiction at the appellate level" is a matter of discretion. *General Motors Corporation v. New York*, 501 F.2d 639, 648 (2d Cir.1974); *see also New York v. Nuclear Regulatory Commission*, 550 F.2d at 759–61. The above decisions indicate that the major factor in determining whether to exercise this jurisdiction is the extent that review of the appealable order will involve consideration of factors relevant to the otherwise nonappealable order.[8] Here, because the two motions are closely interrelated factually and, indeed, are interdependent, we exercise our pendent jurisdiction to review the merits of this order of the court.

We agree with the University that the action taken by the district court was a stay, not an outright dismissal, of the proceedings before us. Thus, the court was not required to state its reasons. However, the parties have plowed the ground thoroughly.

■ In sum, Intermedics has failed to persuade us that the district court abused its discretion in staying its own proceedings. First, these proceedings had just been instituted, whereas, proceedings in the Minnesota suit were well advanced at the time the stays were sought. Intermed-

---

**8.** *General Motors*, 501 F.2d at 648. The circuits have uniformly focused on the policy of judicial economy in deciding whether to review pendent orders and issues. In *Kershner v. Mazurkiewicz*, 670 F.2d 440, 449 (3d Cir.1982), the Third Circuit refused to review a pendent order unless the appealable order could not properly be reviewed without reference to the pendent order. In *New York v. Nuclear Regulatory Commission*, 550 F.2d at 760–61, the Second Circuit considered whether the expanded review would require a greater expenditure of effort than if the court had strictly confined its review to the independently appealable order. In *Shaffer v. Globe Protection, Inc.*, 721 F.2d at 1124, the Seventh Circuit emphasized the extent that the pendent issues "bear upon and are central to" the appealable issue.

ics' argument that patent validity has long been in the federal courts as part of the Venture litigation is meritless. Judge McNaught held it was not and we agree. Moreover, Intermedics delayed many months in bringing the subject action even after the Minnesota suit began. Secondly, a principal defense in the Minnesota suit was that Intermedics had a royalty-free license. A judgment to that effect could well moot the patent suit. Thirdly, the district court was aware that patent invalidity would not *actually* be litigated in the Minnesota suit. Thus, that federal law provides the rule of decision on patent validity is an irrelevant factor here. The Minnesota court was not called on to resolve matters of federal law. Fourthly, the issue of *res judicata* looms large in these proceedings. It is, in this case, not a matter of the University's winning a race to a particular courthouse. The events which may create a bar to litigating patent validity had *already* occurred—if there is a bar—at the time Intermedics filed this suit.

Finally, we do not see any possibility of prejudice to Intermedics by reason of duplicative or piecemeal litigation. Either the patent validity issue will be barred or mooted by the Minnesota judgment or it will be litigated in the federal district court. In the latter event, that court may or may not have to resolve the royalties recoupment issue. Moreover, these matters could have been resolved in the Minnesota suit. If there is piecemeal litigation, Intermedics cannot complain of its burdens.

The above factors are among those considered by the Supreme Court in determining the propriety of a federal court's abstention because of parallel proceedings in a state court in *Moses Cone, supra,* and *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). Those decisions were made in the context of diversity actions, where a court has virtually no discretion with respect to exercising jurisdiction, and, thus, are not directly applicable to declaratory judgment actions. *Cf. Geni-Chlor International, Inc. v. Multisonics Development Corp.,* 580 F.2d 981,

985, 200 USPQ 67, 70 (9th Cir.1978) (judicial discretion to exercise declaratory judgment jurisdiction should not be exercised "to snatch from the state courts a dispute concerning obligations under a contract purporting to assign patent rights"). Nevertheless, we believe the similar analysis made above is appropriate in the context of stay/dismissal of a declaratory judgment action once the district court accepts jurisdiction, and such analysis has led us to conclude that Intermedics' position fails.

In addition, as indicated, there is also the consideration that as a result of the Minnesota action, the issues in the Patent declaratory judgment action may be either precluded or moot. The court's abstention from exercising jurisdiction until these waters have settled seems to us extremely prudent.

For the foregoing reasons, we hold that the district court did not abuse its discretion in staying the Patent declaratory judgment action.

AFFIRMED.