**BAYER AG and Bayer Corporation,**
**Plaintiffs,**

v.

**HOUSEY PHARMACEUTICALS,**
**INC., Defendant.**

No. CIV.A.01–148–SLR.

United States District Court,
D. Delaware.

Oct. 22, 2002.

Jeffery B. Bove and Mary W. Bourke of Connolly, Bove, Lodge & Hutz, LLP, Wilmington, Delaware. Counsel for Plaintiffs.

M. Duncan Grant and Joseph S. Naylor, of Pepper, Hamilton, LLP, Wilmington, Delaware. Counsel for Defendant. Of Counsel: Rolf Stadheim, Joseph A. Grear, and George Summerfield of Stadheim & Grear, Ltd., Chicago, Illinois.

## MEMORANDUM OPINION

SUE L. ROBINSON, Chief Judge.

## I. INTRODUCTION

Plaintiffs Bayer AG and Bayer Corporation filed this action on March 6, 2001 seeking a declaratory judgment that four patents assigned to defendant Housey Pharmaceuticals, Inc. are invalid, unenforceable and not infringed.[1] (D.I.1) Defendant has filed a counterclaim of infringement. (D.I.5) The court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338(a) and 2201(a). Currently before the court are plaintiffs' motion for summary judgment of unenforceability of the patents in suit on grounds of misuse (D.I.190) and defendant's motion for summary judgment on plaintiffs' affirmative defense of patent misuse. (D.I.184) For the following reasons, the court shall deny plaintiffs' motion and grant defendant's motion.

---

**1.** Defendant Housey Pharmaceuticals, Inc. recently changed its name from ICT Pharmaceuticals, Inc. (D.I.38) The patents in suit are

## II. BACKGROUND

The ICT patents, each entitled, "Method of Screening for Protein Inhibitors and Activators," generally relate to research methods used by pharmaceutical companies for discovering drugs. (D.I.1) The patented methods enable companies to screen substances for active compounds that indicate a potential for development as pharmaceuticals. (*Id.*) This court's October 17, 2001 order found that the defendant's patents cover only research methods, not manufacturing methods. *See Bayer AG v. Housey Pharmaceuticals, Inc.*, 169 F.Supp.2d 328 (D.Del.2001). Thus, the patent claims at issue do not cover end products, but rather the identification and generation of data used to develop new pharmaceuticals.

Defendant has licensed the ICT patents to over 30 companies. (D.I.192, Ex. 27) Among the licensees are SCIOS, Inc. ("SCIOS"), Eli Lilly and Company ("Eli Lilly"), and Takeda Chemical Industries, Ltd. ("Takeda"). (*Id.*, Exs. 6, 10, 16) Defendant also sent several letters to plaintiffs attempting to negotiate a license. (*Id.*, Exs. 17–20, 21–26)

Defendant has agreed to, and proposed, two different types of licensing arrangements with licensees and potential licensees. One type is a running royalty license that requires the licensee to pay a royalty for sales of pharmaceutical products discovered using the subject invention. This is the type of license accepted by SCIOS and Eli Lilly. (*Id.*, Exs. 6, 10) The second type is a lump sum payment license that requires the licensee to pay a lump sum royalty based upon the licensee's research and development budget. This is the type of license accepted by Takeda. (*Id.*, Ex. 16) Both types of licens-

---

United States Patent Nos. 4,980,281, 5,266,-464, 5,688,655 and 5,877,007 (collectively, the "ICT patents").

es were offered to plaintiffs. (*Id.*, Exs. 17–20, 21–26)

## III. STANDARD OF REVIEW

A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n. 10, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Fed. Kemper Life Assurance Co.*, 57 F.3d 300, 302 n. 1 (3d Cir.1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348 (quoting Fed.R.Civ.P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir.1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## IV. DISCUSSION

■ Patent misuse is an equitable defense to a charge of patent infringement. The basic allegation is that the patentee has "extend[ed] the economic benefit beyond the scope of the patent grant." *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1372 (Fed.Cir.1998) (citing *Mallinckrodt, Inc. v. Medipart, Inc.*, 976 F.2d 700, 703–04 (Fed.Cir.1992)). Patent misuse "requires that the alleged infringer show that the patentee has impermissibly broadened the physical or temporal scope of the patent grant with anticompetitive effect." *Virginia Panel Corp. v. MAC Panel Co.*, 133 F.3d 860, 868–71 (Fed.Cir.1997) (quoting *Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1001 (Fed.Cir.1986)).

Plaintiffs assert defendant has committed the following acts of patent misuse: (1) extracting and attempting to extract royalties on products and activities that are not covered by the claims of any of the patents in suit; (2) imposing a requirement of royalty payments beyond the term of the patent; and (3) attempting to muzzle licensees. Defendant denies each of these allegations and asserts that, regardless of whether the above acts were committed, patent misuse requires an anti-competitive effect that is lacking in this case.[2] The court will discuss each of plaintiffs' allegations in turn.

2. Due to the court's finding that defendant's acts do not constitute patent misuse, it will be unnecessary for the court to address the presence or absence of an anti-competitive effect.

A. **Extracting and Attempting to Extract Royalties on Products and Activities That Are Not Covered by the Claims of Any of the Patents in Suit**

1. **License Agreements and Proposals Based on Products and Activities not Covered by the Patents**

■ Citing both the existing licensing agreements and the licensing proposals, plaintiffs argue that defendant has insisted upon licenses that impose royalties on products and activities not covered by the patents. According to plaintiffs, this constitutes patent misuse. Defendant asserts that it has not conditioned the grant of a license on the inclusion of unpatented products and activities and, thus, cannot have committed patent misuse. Defendant further argues that license agreements based on products and activities not covered by the patent are not patent misuse if the license agreements are for the convenience of the parties.

Plaintiffs rely on *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969), for their contention that defendant's licensing activities constitute patent misuse. In *Zenith Radio*, the Supreme Court held "that conditioning the grant of a patent license upon payment of royalties on products which do not use the teaching of the patent does amount to patent misuse." *Id.* at 135, 89 S.Ct. 1562. The Court, however, limited the holding to particularly egregious circumstances. In refusing to reverse the district court's injunction, the Court stated:

> The trial court's injunction does not purport to prevent the parties from serving their mutual convenience by basing royalties on the sale of all radios and television sets, irrespective of the use of [the patentee's] inventions. The injunction reaches only situations where the patentee directly or indirectly "conditions" his license upon the payment of royalties on unpatented products—that is, where the patentee refuses to license on any other basis and leaves the licensee with the choice between a license so providing and no license at all.

*Id.*

The key consideration of whether the patentee "conditions" a license upon the payment of royalties on unpatented products and activities is "the voluntariness of the licensee's agreement to the royalty provisions[.]" *Engel Indus., Inc. v. Lockformer Company*, 96 F.3d 1398, 1408 (Fed. Cir.1996) (citing *Zenith Radio*, 395 U.S. at 138, 89 S.Ct. 1562). If the license agreement is for the convenience of the parties in measuring the value of the license, then the agreement cannot constitute patent misuse. *See, e.g., Engel Indus.*, 96 F.3d at 1408 (citing *Automatic Radio Mfg. Co. v. Hazeltine Research, Inc.*, 339 U.S. 827, 70 S.Ct. 894, 94 L.Ed. 1312 (1950); *Zenith Radio*, 395 U.S. at 138, 89 S.Ct. 1562).

Plaintiffs have provided no evidence that defendant has impermissibly "conditioned" its licenses upon royalty provisions covering unpatented products and activities. Plaintiffs have only established that licensees, including themselves, have objected to the terms proposed by defendant. Specifically, after receiving the initial offer from defendant, plaintiffs determined that the patents were invalid and the proposed licensing terms were improper. Defendant continued to make numerous offers to plaintiffs over the next several years. Plaintiffs make much of the fact that the license terms and proposals were drafted by defendant. However, plaintiffs provide no evidence of ever offering other terms they felt were equally convenient and more appropriate. In *Zenith Radio*, relied on by plaintiffs, the Supreme Court stated that "misuse inheres in a patentee's insis-

tence on a percentage-of-sales royalty ... and his **rejections** of licensee proposals to pay for actual use." 395 U.S. at 139, 89 S.Ct. 1562 (emphasis added). In the case at bar, plaintiffs provided no evidence of proposing a licensing arrangement to pay for actual use. Rather, they blame defendant for not doing so. (D.I. 191 at 19)

Moreover, and contrary to plaintiffs' assertions, defendant has provided evidence that existing license agreements were not "conditioned" on a license with royalty provisions covering unpatented products and activities. The license with SCIOS specifically states that the licensee "selected the royalty payment option ... as the most appropriate and convenient approach to determine the value of the Licensed Patent Rights." (D.I. 192, Ex. 6 at § 3.1). In addition, defendant's deposition testimony and correspondence to plaintiffs indicate a willingness to consider other licensing terms. (D.I. 186, Ex. 8; 203, Ex. B)

■ The court finds that defendant has not impermissibly conditioned a license upon royalty provisions covering unpatented products and activities.[3] Thus, on this point, plaintiffs' motion for summary judgment is denied and defendant's motion for summary judgment is granted.

### 2. License Agreements Based on Alleged Infringement under Section 271(g).

■ Plaintiffs also argue that defendant has extracted royalties from Eli Lilly and Takeda based on improper accusations of infringement under section 271(g). Based on this court's opinion dismissing defendant's claims of infringement under section 271(g), *see Bayer AG v. Housey Pharmaceuticals, Inc.,* 169 F.Supp.2d 328 (D.Del. 2001), plaintiffs argue that defendant's prior insistence of royalties under 271(g) con-

stitutes patent misuse. Defendant argues that activities that occurred years before this court's ruling on the issue of infringement under section 271(g) cannot constitute patent misuse.

In *Virginia Panel Corp. v. MAC Panel Co.,* 133 F.3d 860 (Fed.Cir.1997), the Federal Circuit considered an allegation of patent misuse based on enforcement threats by the patentee to government contractors. The government contractors could not be liable for infringement based upon 28 U.S.C. § 1498, which required the patentee's remedy be against the United States only. *See id.* at 868–70. The district court had upheld a jury finding of patent misuse. *See id.* at 868. The Federal Circuit reversed, finding that the patentee's threats "did not constitute patent misuse because [the patentee] had a good faith belief that those it notified were using a device that infringed the ... patent." *Id.* at 870.

In the case at bar, plaintiffs have provided no evidence that defendant was not enforcing its patent rights in good faith. The fact that defendant was later found to be incorrect in its interpretation of the scope of section 271(g) cannot be the basis of a finding of patent misuse absent a lack of good faith on the part of defendant. *See id.* at 869 ("A patentee that has a good faith belief that its patents are being infringed violates no protected right when it so notifies infringers.") (quoting *Mallinckrodt,* 976 F.2d at 709). Because plaintiffs have failed to allege, much less prove, a lack of good faith by defendant, this court finds defendant's actions regarding enforcement of perceived patent rights under section 271(g) do not constitute patent misuse. Thus, on this point, plaintiffs' motion for summary judgment is denied and de-

---

**3.** The court notes that plaintiffs repeatedly refer to defendant's threats of litigation as evidence of the involuntary nature of the li-

censing agreements. Aggressive enforcement of a patentee's rights, however, is not patent misuse. See 35 U.S.C. § 271(d)(3).

fendant's motion for summary judgment is granted.

## B. Imposing a Requirement of Royalty Payments Beyond the Term of the Patent

■ The license agreement with SCIOS Inc. ("SCIOS") contains the following section regarding royalty payments:

> In the case of an End Product that is not a Licensed Product and is not covered per se or for a given purpose by any patents obtained by LICENSEE, the obligation to pay royalties shall end ten (10) years after the last to expire of the patents in the Licensed Patent Rights having a claim or claims for a Licensed Method utilized in discovering, creating, identifying, characterizing, isolating, developing, manufacturing, evaluating or establishing the pharmacological properties or condition of use of the End Product (or a component thereof) for the given purpose.

(D.I. 192, Ex. 6 at § 3.5.2)

Plaintiffs assert that this royalty clause in the SCIOS license requires the payment of royalties after the expiration of the patent.[4] Relying on the Supreme Court's holding in *Brulotte v. Thys Co.*, 379 U.S. 29, 85 S.Ct. 176, 13 L.Ed.2d 99 (1964), plaintiffs argue this constitutes patent misuse *per se*.

Defendant asserts that the license provision is not patent misuse *per se* for two reasons. First, the license provision only imposes royalties for use of the subject invention during the life of the patent. The royalties paid after the expiration of the patent, on pharmaceuticals sold after the expiration of the patent, are actually royalties for use of the invention during the research phase of the pharmaceutical—the research phase that occurred prior to the expiration of the patent. Second, defendant argues, the license provision is not patent misuse unless defendant actually attempts to collect post-expiration royalties. The mere presence of a clause permitting collection of post-expiration royalties is not patent misuse.

In *Brulotte*, the Supreme Court held that patent misuse occurs when a licensing agreement "allows royalties to be collected which **accrued** after the last of the patents ... [has] expired." 379 U.S. at 30, 85 S.Ct. 176 (emphasis added). In the case at bar, the royalties to be paid after the expiration of the patent are for the use of the subject invention prior to the expiration of the patent. Royalties are collected based on later pharmaceutical sales, but the royalties are being **accrued** as the invention is practiced during the research phase.[5] Collecting royalties after the expiration of the patent has expired is not *per se* patent misuse as plaintiffs assert. Indeed, the Supreme Court has recognized that a patentee may collect royalties post-expiration without violating *Brulotte*. The

---

4. The court notes that part of section 3.5.1 of the SCIOS license that may have impermissibly imposed royalties beyond the expiration of the patent has been voided by the licensee and licensor. (D.I.186, Ex. 6)

   Plaintiffs also argue that other licenses, such as the license with Eli Lilly, require post-expiration royalties. (D.I. 192, Ex. 10 at § 5.6) Although the language of these agreements regarding the reporting requirements is somewhat ambiguous, the agreement clearly states: "The term of this Agreement shall extend from the above effective date until expiration of the last to expire of Licensed Patent Rights." (D.I. 192, Ex. 10 at § 8.1) Thus, the agreement does not extend beyond the term of the patent.

5. The court notes that neither party submitted any evidence on summary judgment to prove that the ten (10) year term in the SCIOS license is temporally appropriate to only collect royalties for research use of the subject invention which accrued prior to the expiration of the patent and cannot in fact impose royalties for use of the subject invention post-expiration.

Court acknowledged "that the patentee could lawfully charge a royalty for practicing a patented invention prior to its expiration date and that **the payment of this royalty could be postponed beyond that time[.]**" *Zenith Radio,* 395 U.S. at 136, 89 S.Ct. 1562 (emphasis added). The problem arises when "the post-expiration royalties were not for prior use but for current use, and were nothing less than an effort by the patentee to extend the term of his monopoly beyond that granted by law." *Id.* Thus, the SCIOS license does not violate *Brulotte* and defendant has not committed patent misuse.

The cases cited by the parties are inapposite. The Federal Circuit's *Virginia Panel* decision, cited by plaintiffs, did not involve collection of royalties accrued prior to the expiration of the patent. *See Virginia Panel,* 133 F.3d at 868–71. The *Amsted Industries* case, cited by defendant, dealt with damages issues of accelerated market entry. *See Amsted Indus. Inc. v. National Castings Inc.,* No. 88–C–924, 1990 WL 106548, *17–22 (N.D.Ill. Jul.11, 1990). "Accelerated reentry damages ... are not the equivalent of a royalty which extends beyond the expiration of the patent." *Id.* at *20.

The court finds that plaintiffs have not proven patent misuse on the issue of imposing royalties beyond the term of the patent.[6] Thus, on this point, plaintiffs' motion for summary judgment is denied and defendant's motion for summary judgment is granted.

### C.  Attempting to Muzzle Licensees

Plaintiffs allege defendant has attempted to muzzle licensees in violation of *Lear, Inc. v. Adkins,* 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610 (1969). Defendant argues that the license provision does not violate *Lear* because the licensing agreement specifically acknowledges that the licensee can contest validity or enforceability at any time. In addition, defendant argues that even if the provision is unenforceable under *Lear,* the mere presence of the provision does not constitute patent misuse.

In *Lear,* the Supreme Court held that a licensee is not estopped from challenging the validity of a patent. *See* 395 U.S. at 670–71, 89 S.Ct. 1902. Thus, contract provisions attempting to preclude licensees from challenging the validity of a patent were rendered unenforceable. The Court further held that a licensee could not be required to make royalty payments while challenging validity. *See id.* at 673–74, 89 S.Ct. 1902.

Defendant's license with SCIOS includes the following provision:

ICT acknowledges the LICENSEE is not estopped from contesting the validity or enforceability of the Licensed Patent Rights. However, LICENSEE acknowledges that such an attack on validity or enforceability of the Licensed Patent Rights is inconsistent with the purposes of this License Agreement. Accordingly, LICENSEE hereby agrees that if it decides to assert its right to contest the Licensed Patent Rights, in whole or in part, that ICT shall have the right, at ICT's option, to terminate this License Agreement by giving written notice thereof to LICENSEE. Further, unless terminated by ICT, LICENSEE agrees to make all payments due under this License Agreement notwithstanding any challenge, by LICENSEE or others (if any) to the Licensed Patent Rights, so long as the applicable patent(s) or patent application(s) remain in effect.

**6.** As the court does not find the SCIOS license provision *per se* patent misuse, defendant's argument that the mere presence of the clause cannot be patent misuse until enforced is moot.

(D.I. 192, Ex. 6 at § 7.3) Essentially, section 7.3 reserves to defendant: (1) the right to terminate the license if a challenge to validity is made or (2) the right to require SCIOS to continue making royalty payments during a pending validity challenge.

■ The portion of section 7.3 giving defendant the right to require the licensee to continue making royalty payments if the licensee chooses to challenge validity is unenforceable under *Lear. See ·Cordis Corp. v. Medtronic Inc.*, 780 F.2d 991, 995 (Fed.Cir.1985) ("The holding of *Lear* . . . prevents the affirmative enforcement by the licensor of the royalty payment provisions of the license agreement while the patent's validity is being challenged by the licensee.").

■ The inclusion of a provision in a license agreement that is unenforceable under *Lear*, however, does not. constitute patent misuse. *See Panther Pumps & Equipment Co. v. Hydrocraft, Inc.*, 468 F.2d 225, 232 (7th Cir.1972) ("[I]t [is] inappropriate to preclude enforcement of a valid patent against an infringing non-licensee simply because an unenforceable provision has been included in a patent license agreement."); *see also Wallace Clark & Co. v. Acheson Indus., Inc.*, 401 F.Supp. 637, 640 (S.D.N.Y.1975), *affirmed*, 532 F.2d 846 (2d Cir.1976) ("[T]he inclusion therein of this unenforceable provision does not constitute patent misuse.") (internal citation omitted); *Congoleum Indus., Inc. v. Armstrong Cork Co.*, 366 F.Supp. 220, 233 (E.D.Pa.1973), *affirmed*, 510 F.2d 334 (3d Cir.1975). (same); *Robintech, Inc. v. Chemidus Wavin, Ltd.*, 450 F.Supp. 817, 821 (D.D.C.1978) (same).

Plaintiffs have not provided the court with any authority to the contrary. Thus,

the court finds that while section 7.3 of the SCIOS license may very well be unenforceable under *Lear*, the inclusion of the provision does not constitute patent misuse.[7] Accordingly, on this point, plaintiffs' motion for summary judgment is denied and defendant's motion for summary judgment is granted.

## V. CONCLUSION

For the reasons stated, the court shall deny plaintiffs' motion for summary judgment of unenforceability of the patents in suit on grounds of misuse and grant defendant's motion for summary judgment on plaintiff's affirmative defense of patent misuse. An appropriate order shall issue.

---

**7.** Defendant's license with Glaxo Wellcome Inc. also contains a provision that may be unenforceable under *Lear*. (D.I. 192, Ex. 9 at § 3.9) For the reasons discussed regarding the SCIOS license, the presence of this provision does not constitute patent misuse.